# JANUARY TERM, 1915.

### MILLER *v.* PETER.

1. JUDGMENT—RES JUDICATA—ACCOUNTING.

    Where a decree in chancery declared a deed to be a mortgage, and fixed the amount and ordered an accounting of the rentals, and the intestate owner had been a party and was afforded an opportunity to be heard as to her claim that she was merely a surety and that the liability had been reduced by payments or otherwise, the decree was conclusive, in a subsequent hearing and accounting, upon the estate of the intestate, in which later proceeding the issue related to the effect upon the amount of indebtedness of certain releases and payment received therefor by the mortgagee that were considered by the court of chancery in entering its former decree and by the Supreme Court on appeal.

2. SAME—EVIDENCE—RENTAL VALUE.

    Where defendants' claim that the rental value of a farm was fixed at an unreasonably low figure and there were numerous witnesses sworn on either side whose testimony was greatly in conflict, ranging from nothing to $720 and averaging on the one side about $641, and about $136 on the other, and it appeared that the soil was well adapted to raising garden truck and live stock, *held*, that the yearly rental should be fixed at about $2.50 per acre in addition to taxes and insurance premiums, or about $400 per annum, instead of $200, as the chancellor determined upon the hearing below.

Appeal from St. Clair; Law, J. Submitted January 13, 1914. (Docket No. 63.) Decided January 8, 1915.

Bill by Anna T. Miller and another as administrator against Roxana Peter and others, administrators of

the estate of William Peter, deceased, for an accounting and to declare a deed to be a mortgage. The case was heard and an appeal taken by complainant to the Supreme Court which remanded the cause for an accounting. *Miller* v. *Peter*, 158 Mich. 336 (122 N. W. 780). From a decree for defendants complainant Albert Miller, administrator, appeals. Modified and affirmed.

*John E. Kinnane* and *Dudley J. Kavanagh* (*James H. Kinnane,* of counsel), for appellants.

*James E. Duffy,* for appellees.

BIRD, J. The bill of complaint in this case was filed to have a deed absolute upon its face declared a mortgage, for permission to redeem therefrom, and for an accounting. In the trial court the bill was dismissed. On appeal in this court the deed was declared to be a mortgage, and the amount fixed as due thereon was $4,000, and an accounting was ordered, covering the period of Mr. Peter's possession of the premises. 158 Mich. 336 (122 N. W. 780). The accounting has taken place and the case is now before us on that question. The deed which was declared to be a mortgage, conveyed a farm of 160 acres situate within a mile from the village of Algonac, in St. Clair county. William Peter took possession of the same on May 1, 1894, under his supposed deed, made improvements thereon, and received the income therefrom. For the purpose of determining the state of the account between the parties, this accounting was ordered. A large amount of testimony was taken bearing on the rental value, the improvements made, and the waste committed thereon, during that period. This testimony persuaded the chancellor that William Peter's estate should be credited with the following items: By the amount adjudged by this court to be due on

the mortgage, $4,000. By interest on the same from May 1, 1894, to May 1, 1912, at the rate of 8 per cent. By betterment of land by clearing, ditching, and fertilizing, $300. By betterment of farm by reason of fences erected and repaired, $400. By betterment of buildings by reason of repairs and additions thereto, $500. It was further found that the estate should be charged with a yearly rental of $200, plus the taxes and insurance. Also the sum of $218.50 on account of waste committed. Two questions are raised and argued by appellant:

(1) The refusal of the chancellor to credit complainants with certain moneys received by the mortgagee for releases of two parcels of real estate owned by Lewis, and included in the principal mortgage.

(2) Exceptions to the finding of the chancellor upon different items of the account.

(1) The $4,000 which this court found to be due on the mortgage to the Peter estate was incurred by Jennie Miller as surety. The principal debtors were Miller and Lewis. It is the claim of complainant that during the period of her suretyship, William Peter, mortgagee, released two parcels of real estate covered by the principal mortgage, to which mortgage complainant's was collateral, and that now the amount of the lien upon her lands should be reduced by the amount received for such releases. The defendant's answer to this is that the question is foreclosed because it was pressed and passed upon at the first hearing of the case before this court. The opinion of this court makes reference to it in the following manner. We quote from the statement in the opinion:

"On the 22d day of August, 1889, he had released to Lewis a part of the property covered by the mortgage given by him. On the 3d of June, 1890, he made a further release of property covered by the Lewis mortgage. The evidence is not very clear as to the occasion for this, although there is testimony tending

to show that the reason for this release was that the property before it was mortgaged had been sold on contract, and that it was released in order that the parties equitably entitled to the property might secure the same."

In the opinion it is said:

"The same thing may be said of the releases of the land of Mr. Lewis. These releases had been made prior to this adjudication, and had operated as payments, at least *pro tanto*, at the time the decree was made, if at all, and yet there is no claim of any fraud, and no attempt has been made to set aside that decree by a direct proceeding, nor has any attack been made upon it for many years."

The foregoing excerpts from the statement and opinion of the case clearly show that the question of the releases was before the court and passed upon. This view is also strengthened by the fact that the accounting appears to have been the only question left open, and the court indicated, by specific language, what it intended the accounting should cover. It was there said:

"We think, therefore, that this deed should be held as a security for the sum of $4,000, and complainants should be permitted to redeem upon the payment of that amount, with interest. *The defendants should be charged with the rental value of the property, less expenditures made in the ordinary course of husbandry.*"

But it is argued that the administrator of Jennie Miller's estate was not, at that time, a party to the proceeding, and that if the question were then passed upon, it could not bind him. At the time of the hearing in this court, the administrator was not a party. He was brought in, however, before the accounting began, but the fact must not be overlooked that Jennie Miller herself was made a party to the foreclosure proceedings, and had an opportunity to be heard at

that time if she chose, with reference to the releases.

It is still further argued that the question is one of accounting, and therefore should have been considered. We cannot agree with this view. It is not so much a question of accounting as it is one of liability. If it were settled that complainant should be credited with the sums received for the releases, then it would become a question of accounting and not till then. The language of this court in submitting the question for accounting will not permit the determination of any such question of liability.

We think the record shows that this question is *res adjudicata,* and that the chancellor was right in refusing to again consider it.

(2) Complainants argue that the rental value was fixed in the decree far below its real rental value, that too small a sum was charged against the estate for waste committed during the period, and that practically nothing ought to be allowed for improvements. Most of the contention arose over the rental value of the premises. Ten witnesses who lived in the vicinity of the premises, and who appeared to be qualified to speak thereon, testified for the complainants and fixed the yearly rental in sums ranging from $480 to $720, or an average of $641. Twelve witnesses testified for the defendants, and they fixed it in sums ranging from $80 to $200. One said it was worth nothing. The average price fixed by defendants' witnesses was $136.25.

The farm in question is located within a mile from Algonac, a village of 1,800 inhabitants, and less than 50 miles from the city of Detroit. It is described by the witnesses as having a comfortable dwelling house thereon, a large barn 100x35 feet, commodious stock sheds and other small outbuildings, two windmills, and good fences. It appeared to be the unanimous opinion of complainants' witnesses that the soil is

well adapted for raising live stock or "garden truck." This does not appear to be denied by defendants' witnesses, but they assert that it is a poor grain farm. Considering these conditions in connection with the opinion evidence, together with the fact that the farm has had the advantage of both interurban and water transportation to the city of Detroit, where its products could be quickly and cheaply marketed, we are convinced that the yearly rent fixed by the chancellor at $200, plus the taxes and insurance, should be increased to $400, plus taxes and insurance. This would make the annual rent $2.50 per acre, plus the taxes and insurance, which would add approximately 50 cents more, making the total yearly rent $3 per acre. During the first half of the period of nine years, from 1894 to 1903, $3 per acre would doubtless be very near its full rental value, but during the latter nine years of the period, it would be somewhat less than a fair rental value. An average of $3 for the full period does not appear to be unreasonable rent.

It appears from the briefs of counsel that since the accounting was ordered the dwelling house has been destroyed by fire and certain insurance collected by the defendants. Inasmuch as this matter is not properly before us, it should be called to the attention of the trial court.

The decree, with reference to rental value, will be modified as herein indicated, and in all other respects it will be affirmed, with costs of this court to complainants.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.